IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDDIE L. HATCH, JR. and MICHELLE DAVIS-HATCH,

                Plaintiff,

    v.

GORMAN AND COMPANY LLC, MILWAUKEE JOURNAL SENTINEL, TOM DIKEN, STATE OF WIS., E. DIST. OF WIS. CT., JUDGE JP STADTMUELLER, GINA COLLETTI, CLERKS, DEP'T OF JUSTICE, FBI SPECIAL AGENT CHRISTOPHER J. BURKE, SEVENTH CIR. CT. OF APPEALS, JUDGE FRANK H. EASTERBROOK, CLERKS, STATE OF WASHINGTON, DC, US SUP. CT. CLERKS, MARINELAND PETS, OWNER THOMAS DIENHART, ASSOCIATED BANK, WHEDA, DOE LAW FIRMS, BOSTON CAPITAL, HARRIS BANK, INDEX DEVELOPMENT, JEWISH FAM. SERVS., SCOTT CRAWFORD GROUP, GALBRAITH CARNAHAN ARCHITECTS, DAN BEYER ARCHITECT, COLDER'S DEP'T STORE, BRANDSOURCE, CAVALRY SPV 1 LLC, LAW FIRM OF CAVALRY, THE CITY OF MILWAUKEE, ROCKY MARCAUX, JOHN AND JANE DOES, HUSCH BLACKWELL LLP AND ASSOCS., EMILY LOGAN STEDMAN, ANTHONY ANZELMO, KASDORF AND ASSOCS., GAVIN L. WARDZALA, MICHAEL MURRAY, DUSTIN WOEHL, and LISA SWANKY,

                Defendants.

OPINION and ORDER

25-cv-238-jdp

---

Plaintiffs Eddie L. Hatch, Jr. and Michelle Davis-Hatch, a married black couple, allege that defendants discriminated against them based on race in connection with the Hatches' unsuccessful proposal to buy a commercial property owned by defendant City of Milwaukee. The Hatches paid the full filing fee, but I have the authority to "screen complaints filed by all

litigants, prisoners and non-prisoners alike, regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

The Hatches previously brought a case based on the same core allegation in the Eastern District of Wisconsin. *See Hatch v. Barrett*, 20-cv-1791 (E.D. Wis.). The district court in the '1791 case dismissed some of the Hatches' claims for failure to state a plausible claim for relief, and it ultimately entered summary against the Hatches on their remaining claims. *See* Dkts. 55, 69, 77, 79, 111, 115, and 203 in the '1791 case. The Hatches appealed, and the court of appeals affirmed. *Hatch v. Barrett*, No. 23-3051, 2024 WL 1867244 (7th Cir. Apr. 30, 2024).

The Hatches' claims in this case are mostly barred by the doctrine of issue preclusion and otherwise facially implausible. I will dismiss the complaint with prejudice for those reasons, and I will overrule the Hatches' objection to my decision to screen the complaint pursuant to Administrative Order 421.

BACKGROUND

The background is mostly drawn from the complaint in this case, judicial orders in the '1791 case, and the court of appeals' decision affirming the district court in that case. The Hatches' pleadings in the '1791 case involved a commercial property located at 3310 West Villard Avenue, Milwaukee, Wisconsin. The property was previously used as a public library but, since at least 2018, it has been vacant and closed to the public. *See* Dkt. 203 in the '1791 case, at 4. In September 2018, the City listed the property for $50,000. *Id.* at 14.

The Hatches previously owned and operated Night Owl Services, LLC. *Id.* Night Owl was in the business of appliance and HVAC repair, though the full scope of its operations was not clear. *Id.* at 4–5 & n.5. In October 2018, the Hatches submitted a bid of $40,000 for the

2

property with preapproval from their lender, and their total project budget was $155,050. *Id.* at 14. The next month, a nonprofit corporation that specializes in community development, Cinnaire Solutions, offered $50,000 for the property, and its total project budget was $7,356,050. *Id.* at 7, 15. Bids of $45,000 and $50,000 from two other entities were subsequently submitted. *Id.* at 16–17. In June 2019, the Hatches learned that the City was rejecting all proposals to develop the property. *Id.* at 21.

In their second amended complaint in the '1791 case, the Hatches brought several claims, including: (1) racial discrimination under 42 U.S.C. §§ 1981 and 1982; (2) conspiracy under 42 U.S.C. § 1983; (3) wire and mail fraud under 18 U.S.C. §§ 1341 and 1343; and (4) claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The district court dismissed the wire and mail fraud claims for failure to state a plausible claim for relief. Dkt. 111 in the '1791 case, at 27–28; *see also* Dkt. 115 in the '1791 case. And because the Hatches based their RICO claims on the wire and mail fraud claims, the district court also dismissed the RICO claims for failure to state a claim. Dkt. 111 in the '1791 case, at 29–30; *see also* Dkt. 115 in the '1791 case. But the district court allowed the Hatches to proceed on the §§ 1981 and 1982 racial discrimination claims and on the § 1983 conspiracy claim against several defendants. *See* Dkt. 111 in the '1791 case, at 11–14, 16–21.

The district court ultimately entered summary judgment against the Hatches on the racial discrimination and conspiracy claims. Dkt. 203 in the '1791 case. Regarding the racial discrimination claims, the district court found that any "inference of intent to discriminate on the basis or race [was] flatly contradicted by the record." *Id.* at 25. More specifically, the court found:

- "Plaintiffs essentially conceded in their depositions that their claims regarding race discrimination are largely speculative and based on unverified assumptions."

- "[Plaintiffs] confirmed that the sole basis for their allegations of racial discrimination was the fact that the proposal of Plaintiffs, a Black family with preapproval from their lender, was not selected over that of the Cinnaire Defendants, which did not have preapproved financing and the President of which is not Black."

- "Plaintiffs' argument that the denigration of their proposal must have been based on race because they had firm financing while the Cinnaire Defendants did not is not only contradicted by the record but is also legally deficient because it assumes racism with no proof."

- "Plaintiffs themselves believed that other factors—such as competing money interests, the relative size of their business, their relative inexperience, or prior relationships—motivated the failure of their Proposal."

- "The record . . . reveals motivations relating to aesthetics of the proposed uses of the Property, the amount of money offered (indeed, Plaintiffs' offer was the lowest of all the proposals and the only one below the listing price), the number of jobs a proposal was anticipated to bring, the perceived feasibility of achieving the goals of the relative proposals, timeliness, proposed budgets, and the business and project history of the parties submitting proposals. But no portion of the record supports the conclusion that Plaintiffs' race played a role in the

- denigration of their Proposal or that any of the aforementioned motivations were pretextual."

- "Plaintiffs' § 1982 claim fails for the same reason their § 1981 claim fails—for lack of evidence of race-based intent. . . . [T]he record is devoid of evidence indicating that any interference in Plaintiffs' property rights was motivated by racial prejudice."

*Id.* at 25–27, 30 (internal citations omitted).

The district court also entered judgment against the Hatches on their § 1983 conspiracy claim, partly because there was no underlying federal-law violation. *See id.* at 30–31. On appeal, the Hatches mostly limited their challenge to the district court's order for a second amended complaint; they did not challenge its summary judgment order. *See Hatch*, 2024 WL 1867244, at *2. The court of appeals rejected the Hatches' arguments and affirmed. *See id.* *1–2.

In this case, the Hatches' primary allegation is that defendants conspired to "unlawfully position Cinnaire Solutions (a white man) as the best proposal (highest and best) for the subject property . . . . , with no firm financing in place." Dkt. 1 at 6. The Hatches also allege that "Federal Court Judges and Clerks joined the enterprise by denying Justice to the same minorities." *Id.*

ANALYSIS

I take the Hatches to bring these claims: (1) §§ 1981 and 1982 racial discrimination claims; (2) unspecified RICO claims; (3) Fifth and Seventh Amendment claims based on the dismissal of, and consequent denial of a jury trial in, the '1791 case; and (4) a § 1983 conspiracy

5

claim. The Hatches' complaint has several problems; my analysis focuses on one deficiency that is mostly dispositive: issue preclusion.

Issue preclusion, also referred to collateral estoppel, "applies based on a prior federal judgment when (1) the issue sought to be precluded was the same as that involved in the prior litigation, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (alterations adopted). Issue preclusion applies to both factual and legal issues. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

"A litigant was 'fully represented' in a prior case if he had 'a "full and fair opportunity" to litigate the issues in the earlier case.'" *Stevenson v. Gen. Mills Inc.*, No. 21-cv-1052, 2023 WL 2142215, at *3 (E.D. Wis. Feb. 21, 2023) (alterations adopted) (quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980)). Full representation for purposes of issue preclusion does not require that the party against whom the doctrine is used had legal representation. *See DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013) ("[T]he idea that litigating pro se should insulate a litigant from application of the collateral estoppel doctrine . . . is absurd."); *Stevenson*, 2023 WL 2142215, at *3; *Bernstein v. Heritage Union Life Ins. Co.*, No. 13-cv-3643, 2017 WL 395702, at *4 n.4 (N.D. Ill. Jan. 30, 2017). I may raise issue preclusion on my own. *Jackson v. Murphy*, 468 F. App'x 616, 619 (7th Cir. 2012); *see Schillinger v. Kiley*, No. 21-2535, 2022 WL 4075590, at *1 (7th Cir. Sept. 6, 2022); *Hopkins v. Milwaukee Secure Det. Facility*, 575 F. App'x 667, 668 (7th Cir. 2014).

In this case, the Hatches' primary allegation is that defendants conspired to "unlawfully position Cinnaire Solutions," whose president is white, as the "highest and best" proposal for

6

the subject property even though Cinnaire hadn't secured "firm financing." Dkt. 1 at 6. But this was also the Hatches' key allegation in the '1791 case. *See* Dkt. 203 in that case, at 25. The district court found that this argument was "not only contradicted by the record but . . . also legally deficient because it assume[d] racism with no proof." *Id.* at 26. The district court also found that the record showed that several nondiscriminatory factors led to the rejection of the Hatches' proposal. *Id.* Similarly, the district court found that the Hatches themselves believed that nondiscriminatory factors caused their proposal to fail. *Id.*

Based on these findings, the district court entered judgment against the Hatches on their §§ 1981 and 1982 racial discrimination claims. *Id.* at 23–30. Specifically, the district court concluded that the Hatches failed to show that they were denied the right to make and enforce a contract, or that their property rights were interfered with, based on their race. *See Morris v. Off. Max, Inc.*, 89 F.3d 411, 413–14 (7th Cir. 1996); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993); *see also Morris*, 89 F.3d at 413 ("Because of their common origin and purpose, § 1981 and § 1982 are generally construed in tandem.").

These findings preclude the Hatches' §§ 1981 and 1982 racial discrimination claims in this case. The first element of claim preclusion is satisfied because these claims are substantially identical to the Hatches' §§ 1981 and 1982 racial discrimination claims in the '1791 case. On the second element, the racial discrimination claims were actually litigated in the '1791 case; the district court made specific factual and legal findings to support its disposal of them. The third element is met because the district court's findings were necessary to enter summary judgment against the Hatches on those claims. And the fourth element, full representation, is satisfied because the Hatches vigorously litigated their racial discrimination claims before the

7

district court, which disposed of them in an extensive written opinion. Also, the Hatches appealed the district court's unfavorable judgment, though they waived any objection to that ruling by not challenging it on appeal. *Hatch*, 2024 WL 1867244, at *2. I will not allow the Hatches to proceed on their §§ 1981 and 1982 racial discrimination claims because issue preclusion bars them.

This ruling also disposes of the Hatches' Fifth and Seventh Amendment claims based on the dismissal of, and consequent denial of a jury trial in, the '1791 case. The Hatches base these claims on allegations that district court and court of appeals erred in entering judgment against them on the §§ 1981 and 1982 racial discrimination claims. But, as I've explained, the Hatches are precluded from bringing a new federal lawsuit challenging the entry of summary judgment against them on those claims. In other words, the Hatches cannot show that the district court or court of appeals erred in entering judgment on those claims against them. In short, the basis of the Fifth and Seventh Amendment claims is factually and legally implausible.

The Fifth and Seventh Amendment claims also have more specific pleading problems. The Fifth Amendment due process claim is implausible because the Hatches received notice of, and an opportunity to oppose, summary judgment in the '1791 case. *See Johnson v. Purdue*, 126 F.4th 562, 566 (7th Cir. 2025). The Hatches' Seventh Amendment claim is implausible because the Seventh Amendment does not entitle a litigant to a jury trial in a civil case where there are no genuine factual disputes for a jury to resolve. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006). I will not allow the Hatches to proceed on their Fifth and Seventh Amendment claims.

Issue preclusion also bars the Hatches' RICO claims, but there's a preliminary problem: the Hatches have not pleaded any facts to support their RICO claims. The RICO claims are

not viable for that reason alone. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). The Hatches' sweeping allegations of conspiracy aren't enough. *See Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587 n.56 (7th Cir. 2017) ("Allegations of fraud in a RICO complaint are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").

Issue preclusion also applies to the RICO claims. As set forth above, the district court dismissed the Hatches' RICO claims in the '1791 case for failure to state a plausible claim for relief. The Hatches had an opportunity to amend their pleading to fix that problem, but the district court denied their purported third amended complaint because it "was not an amended complaint but merely criticism of prior rulings." *Hatch*, 2024 WL 1867244, at *2. As a result, the district court dismissed the RICO claims with prejudice, and the court of appeals affirmed that ruling. *Id.* *1–2.

These findings preclude the Hatches' RICO claims here. The first element of issue preclusion is satisfied because these claims appear to be the same claims that the Hatches brought in the '1791 case. On the second element, the RICO claims were actually litigated in the '1791 case; the district court explained the basis for its dismissal of them. The third element is met because the district court's findings were necessary for it to dismiss those claims with prejudice. And, again, the Hatches were fully represented because they litigated the RICO claims both in the district court and on appeal, though unsuccessfully. I will not allow the Hatches to proceed on their RICO claims because they are facially implausible and barred by issue preclusion.

That leaves the Hatches' § 1983 conspiracy claim. The conspiracy claim is not viable for two main reasons. First, the Hatches haven't plausibly pleaded any separate violation of federal law. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) ("Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy."). Second, a "complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). But the Hatches' sweeping allegations of conspiracy lack any factual support. I will not allow the Hatches to proceed on their § 1983 conspiracy claim.

The Hatches object to my decision to screen the case pursuant to Administrative Order 421. Dkt. 4. The objections are overruled. *See Rowe*, 196 F.3d at 783.

CONCLUSION

When a plaintiff proceeds without counsel, the court of appeals has cautioned against dismissing his case without giving him a chance to amend the complaint. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). But "if it is clear that any amendment would be futile," I need not grant leave to amend. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

The Hatches have rehashed claims that were previously litigated in federal court and thus are barred by issue preclusion. The Hatches' claims have the other pleading problems discussed above, and additional problems like absolute judicial immunity whose discussion I omitted for brevity. It's clear that further leave to amend would be futile, so I will dismiss the Hatches' complaint with prejudice. The Hatches are warned that further attempts to litigate

these issues in this court may risk consequences, including dismissal of any future lawsuit and imposition of a filing bar.

ORDER

IT IS ORDERED that:

1. The Hatches' complaint, Dkt. 1, is DISMISSED with prejudice for failure to state a plausible claim for relief.

2. The Hatches' objections to my decision to screen the case, Dkt. 4, are OVERRULED.

3. Defendant Davis is to be recaptioned as "Michelle Davis-Hatch."

4. The clerk of court is directed to enter judgment and close the case.

Entered October 31, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge